IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CARL WALKER, #N53451, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-00662-RJD |
| | ) | |
| DR. ALDRIDGE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# ORDER

**DALY, Magistrate Judge:**[1]

Plaintiff Carl Walker is an inmate of the Illinois Department of Corrections ("IDOC") and incarcerated at Vienna Correctional Center ("Vienna") (Doc. 1). He brought this action under 42 U.S.C. § 1983 for deprivations of his constitutional rights resulting from a dental procedure he underwent while at Vienna. After threshold review of the Complaint, the Court designated the following count:

> **Count 1:** **Eighth Amendment deliberate indifference claim against Dr. Aldridge for failing to remove the roots of Walker's damaged tooth and delaying further extraction.**

(Doc. 12, pp. 2–4).

This matter is now before the Court on Defendant's Motion for Summary Judgment, filed by Defendant Dr. Steve Aldridge on July 7, 2026. (Doc. 28). Dr. Aldridge submitted a memorandum in support of his motion that contains a Statement of Material Facts with proper

[1] This matter has been referred to the undersigned, through the parties' consent, to conduct all proceedings including final entry of judgment pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 22).

citation to the record. (Doc. 29, pp. 1–8). Dr. Aldridge also filed a Rule 56 Notice advising Plaintiff of the procedures set forth under FED. R. CIV. P. 56 ("Rule 56") and Local Rule 56.1, and the consequences of non-compliance. (Doc. 30). Specifically, Walker was advised that under Rule 56 and Local Rule 56.1, a party opposing a motion for summary judgment and asserting that a fact is genuinely disputed must support the assertion with citation to particular parts of materials in the record, including page or paragraph number upon which the opposing party relies. (*Id.*). He was also advised that the Court is not required to consider any material not properly cited in a response to a Statement of Material Facts. (*Id.*).

On July 31, 2026, Walker filed a response to Defendant's Motion for Summary Judgment. (Doc. 33). Walker also filed an affidavit on August 6, 2026, which the Court construes as a supplement to his response. (Doc. 34). On August 13, 2026, Dr. Aldridge filed a Reply to Walker's Memorandum in Opposition to the Motion for Summary Judgment. (Doc. 35). On August 24, 2026, Walker filed a Supplement to his Memorandum in Opposition to the Motion for Summary Judgment. (Doc. 36). However, Local Rule 7.1(a)(4) states that "under no circumstances will sur-reply briefs be accepted," and as such the Court will not consider this document.

For the reasons explained below, the Motion for Summary Judgment is **GRANTED** (Doc. 28).

## Evidence in the Record[2]

In Walker's Complaint, he originally alleged he saw Dr. Aldridge to have a tooth removed on May 26, 2023. (Doc. 1, p. 7). This was for "tooth 18." (Doc. 29-1, p. 9, ¶¶ 13–17). However, at

[2] This section is based on the Court's Order for Service of Process (Doc. 12), Plaintiff's deposition (Doc. 29-1), the Declaration of Steve Aldridge (Doc. 29-2), Plaintiff's Complaint (Doc. 1), and various medical documents within the record.

Walker's deposition, on May 29, 2026, he stated that the correct date for this extraction was June 23, 2023. (*Id.* at 71). Walker's grievance, dated June 24, 2023, also stated that "[o]n June 23 at 9:00 a.m., I received a mandatory call pass to see the dentist." (*Id.* at pp. 47–49). Dr. Aldridge corroborated that he first saw Walker for an appointment on May 24, 2023, but that he did not extract the tooth until June 23, 2023. (Doc. 29-2, pp. 1–2). Walker's tooth broke during the extraction, leaving the root in his mouth (Doc. 12, p. 2), which Dr. Aldridge stated is common when working with fragile teeth. (Doc. 29-2, p. 2, ¶ 12).

After the procedure, Walker asked to have the roots removed, but Dr. Aldridge indicated that he was unable to remove the roots because the machine used for extractions, the dental compressor, was broken. (Doc. 12, p. 2); (Doc. 29-1, p. 45, ¶¶ 15–17). Dr. Aldridge's plan was for Walker to be scheduled for a root extraction after the compressor was repaired, as this was not an emergency requiring Walker to be sent to the emergency room. (Doc. 29-2, p. 3, ¶¶ 14–15). Dr. Aldridge indicated that the compressor would be fixed within a week and that then he could remove the roots. (Doc. 12, p. 2). After a couple of days with the roots still in his mouth, Walker began to experience pain and described only being able to eat on one side of his mouth. (*Id.*); (Doc. 29-1, p. 73, ¶¶ 1–4). He was given Ibuprofen, but this failed to relieve his pain. (Doc. 12, p. 2).

On July 3, 2023, Walker was seen by a nurse. (Doc. 29-1, pp. 55–56); (Doc. 29-2, pp. 28–29). The nurse reported a subjective complaint of: "it's not as bad as it was, but not as good as it should be by now." (Doc. 29-1, p. 56, ¶¶ 8–12); (Doc. 29-2, p. 28). At his deposition, Walker did not recall whether he said that. (Doc. 29-1, p. 59, ¶¶ 15–24). The nurse also wrote: "it was pulled over a week ago," "patient to healthcare unit to have oral evaluation status post tooth extraction," and "is noted in chart Number 18 was pulled on 6-24-23. Root remains and note states due to compressor being broken, was unable to be removed and has been scheduled to have root –

scheduled to have root removed." (Doc. 29-1, p. 57); (Doc. 29-2, p. 28). Walker stated this was consistent with his understanding of what happened at the attempted extraction. (Doc. 29-1, p. 57, ¶¶ 15–20). Finally, the progress note stated: "no gross swelling, odor, or redness noted at extraction site. Nurse able to see remaining parts, root, or broken tooth at sight," "no signs or symptoms of infection, status post tooth extraction, no acute distress," "mild discomfort at times," "states reports with cold or hot stuff," "no fever noted," and "no facial swelling noted at the time." (Doc. 29-1, pp. 58–59); (Doc. 29-2, p. 29). Walker did not recall seeing the nurse because of how long ago it was, but he did not dispute that the nurse saw him on this date. (Doc. 29-1, pp. 59–60).

On July 4, 2023, Walker was seen by a nurse again for dental pain. (Doc. 29-2, pp. 31–33). The nurse charted that Walker reported pain in tooth #18, describing the pain as throbbing, and rating it 8/10 on the pain scale. (*Id.* at 31). The nurse noted that Walker had no restricted jaw movement, and that there was no swelling, bleeding, or discharge. (*Id.*). The nurse's plan was ibuprofen 200 milligrams, one to two tablets three times a day, as needed for three days. (*Id.*).

On July 11, 2023, Dr. Aldridge saw Walker for a visit. (Doc. 29-2, p. 4, ¶ 20). He indicated that Walker's roots could not be removed because the compressor was still broken. (*Id.*). The compressor's repair was scheduled, and Walker's extraction appointment was to be set for after the repair was completed. (*Id.*). On July 25, 2023, a month and two days after the failed extraction on June 23, 2023, Dr. Aldridge submitted a referral to an off-site doctor. (Doc. 29-1, pp. 69–71). It was marked as not urgent. (*Id.* at pp. 69–70); (Doc. 1, p. 16). Dr. Aldridge also noted that there was no infection or swelling. (Doc. 1, p. 16). On August 7, the referral was authorized. (Doc. 29-2, p. 4, ¶ 22).

In an affidavit submitted in support of the motion, Dr. Aldridge indicated that he did not initially refer Walker to an outside provider because he thought the compressor would be repaired

in a timely manner to perform the root extraction at Vienna. (*Id.* at p. 5, ¶ 29). Once Dr. Aldridge understood that the compressor was not going to be repaired in a timely manner, he referred Walker to an outside provider. (*Id.* at ¶ 30). The extraction was completed off-site on September 25, 2023 by Dr. Nathan Bowles. (Doc. 29-1, p. 70); (Doc. 29-2, p. 4, ¶ 23). In relevant part, Dr. Bowles charted no signs or symptoms of infection or swelling on tooth #18. (Doc. 29-2, pp. 4–5, ¶ 23). He further charted the surgical extraction was performed without complications, and that recovery was stable. (*Id.*).

Dr. Aldridge stated that he had no control over how or when equipment was repaired at Vienna, nor did he have control over the maintenance of the equipment. (*Id.* at ¶¶ 27–28). Dr. Aldridge also stated that the interruption in Walker's care was caused exclusively by the mechanical breakdown of the compressor, which Dr. Aldridge stated he did not cause nor could have prevented. (*Id.* at ¶ 26). Dr. Aldridge finally stated he was not personally responsible for scheduling Walker to be seen by the outside doctor, and that he had no control over the scheduling of individuals in custody to be seen by outside providers. (*Id.* at ¶¶ 31–32).

At his deposition, Walker stated that he did not know who was responsible for scheduling his appointment with the outside dentist (Doc. 29-1, p. 32), or whether Dr. Aldridge had any involvement in calling them to schedule it. (*Id.* at 72). Walker also stated he had no knowledge as to whether Dr. Aldridge did or did not take action to get the compressor fixed (*Id.* at pp. 52–53), and that he did not know whether Dr. Aldridge did or did not do anything that would cause the compressor not to get fixed within a week. (*Id.* at p. 55). Finally, Walker stated he lacked any evidence that Dr. Aldridge did not truly believe the compressor would get fixed in a week. (*Id.*).

Walker also testified that he worked as a porter at Vienna, which is someone who cleans, mops, and sweeps around the prison. (Doc. 29-1, pp. 33–34). Walker stated that as a porter, he

worked five days on and two off, eight hours each shift. (*Id.* at ¶¶ 14–22). Walked indicated that he was always able to perform his job as a porter while he held the position. (*Id.* at p. 38, ¶¶ 14–16).

**Summary Judgment Standard**

Summary judgment is appropriate only when the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin- Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

**Discussion**

***Deliberate Indifference Standard***

The Eighth Amendment does not mandate comfortable prisons, but it also does not permit inhumane ones. *Brown v. Osmundson*, 38 F.4th 545, 549–50 (7th Cir. 2022) (internal citations omitted). The burden is on the prisoner to show that prison officials violated the Eighth

Amendment, and it is a heavy burden to meet. *Pyles v. Fahim*, 771 F.3d 403, 408–09 (7th Cir. 2014) (citing *Whitley v. Albers*, 475 U.S. 312, 325 (1986)). To succeed on a deliberate indifference claim, the plaintiff first must "provide evidence, either direct or circumstantial," establishing that "he had an objectively serious medical need," which the defendant(s) knew of but consciously disregarded. *Id.* at 550. This principle applies equally to dental care. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citing *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)).

"A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997)). As to the subjective component, mere negligence, civil objective recklessness, or "medical malpractice do[] not become a constitutional violation merely because the victim is a prisoner." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, the defendant must have exhibited a conduct that approaches "a total unconcern for the prisoner's welfare in the face of serious risks" and is akin to criminal recklessness. *Brown*, 38 F.4th at 550 (internal citations omitted); *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013).

The Constitution guarantees inmates treatment within the applicable standard of care, not a specific outcome. *Page v. Obaisi*, 318 F. Supp. 3d 1094, 1104 (N.D. Ill. May 15, 2018) (citing *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). An inmate is not entitled to "demand specific care" or to get "the best care possible." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have [recommended the same] under those circumstances.'" *Pyles*, 771 F.3d at 409 (citations omitted).

Further, "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)). Deliberate indifference implies that a defendant's medical judgment was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, at *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments").

For instance, "[d]eliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (internal citation omitted). Some circumstances which have amounted to a deliberate indifference are a prison official's decision to ignore a request for medical assistance, a doctor's refusal to take instructions from a specialist, a doctor's decision to implement an easier and less efficacious treatment, a doctor's refusal to follow an existing protocol, and a prison official's persistence in proscribing a course of treatment known to be ineffective. *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016) (internal citations omitted).

When treatment is delayed, the key issue is the reason for the delay. *Watts v. Onjukka*, 2026 U.S. Dist. LEXIS 182492, at *8 (W.D. Wis. Aug. 13, 2026) (citing *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 796 97 (7th Cir. 2014)). A mere delay in treatment is insufficient to show

deliberate indifference. *Thomas v. Martija*, 991 F.3d 763, 769 (7th Cir. 2021). Moreover, it is also important to note that defendants who have no control over scheduling appointments with outside providers cannot be held liable under Section 1983 for failing to schedule appointments or failing to "nag" the individuals responsible for scheduling appointments. *Turner v. Paul*, 953 F.3d 1011, 1016 (7th Cir. 2020).

In order to show that a delay in giving treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain. *Petties*, 836 F.3d at 730–31. The Court should look on “how serious the condition in question was, how easy it would have been to treat it, and whether it exacerbated an injury or unnecessarily prolonged pain.” *Thomas*, 991 F.3d at 769 (citing *Petties*, 836 F.3d at 730–31). The delay does not need to be extreme; failing to provide a very easy treatment or accommodation can be sufficient, if unnecessary suffering resulted. *Id.* (citing *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004)).

***Analysis***

Defendant argues he is entitled to summary judgment as a matter of law because there is no evidence from which a jury could conclude that he was deliberately indifferent to Plaintiff’s serious medical needs. Defendant does not contest that this was a serious medical need, but rather argues that there is nothing in the record to suggest that his treatment of Plaintiff reflected a total unconcern for the prisoner’s welfare in the face of serious risks, or that he knew better than to make the dental decisions he made. For the reasons discussed below, Dr. Aldridge was not deliberately indifferent to Walker’s dental condition, and he is therefore entitled to summary judgment.

A year may be too long a time to wait for dental treatment, *see Poirier v. Gierach*, 2024 U.S. Dist. LEXIS 211880, at *17 (E.D. Wis. Nov. 21, 2024), but Walker waited only about three months after the failed extraction to get the off-site procedure. *Compare McGowan*, 612 F.3d at 640 (plaintiff had to wait three months to see a dentist for a first appointment after he *first complained* of dental pain). Within one month of the extraction, Dr. Aldridge made the referral. Additionally, Walker was not waiting for a simple, common dental examination, but rather for a more complicated root extraction procedure. *Compare Berry*, 604 F.3d at 441–42 ("a basic dental examination is not 'an expensive or unconventional treatment,' nor is it esoteric or experimental. Such examinations are inexpensive and commonly sought immediately to address severe dental pain. Thus, Dr. Butler's refusal to permit Berry such a basic treatment option could be characterized as a "gratuitous cruelty" forbidden by the Eighth Amendment.") (internal citations omitted).

Regarding the cause of the delay, Dr. Aldridge stated he did not have control over maintaining the dental equipment, nor did he have control over scheduling inmates for visits with outside providers. At his deposition, Walker stated he did not know whether Dr. Aldridge had control over when the compressor would be fixed, or when he could otherwise be sent off-site for treatment. Moreover, there is also no evidence that Dr. Aldridge prolonged the delay or made it more difficult for Walker to get treatment. *Compare McGowan*, 612 F.3d at 641 (even when it was clear that the extraction had led to a sinus perforation, the dentist stalled in authorizing a referral to an outside surgeon after the contract surgeon had cancelled his planned visit and was not expected back for another three months. It took a grievance from the plaintiff to secure the new referral to the oral surgeon, but still the dentist waited two weeks before acting on the prison dentist's request to expedite the referral to a specialist). As such, there is no evidence showing that Dr. Aldridge had control over the cause of the delay or the ability to control it, and thus he cannot

be held liable for it. *See Poirier*, 2024 U.S. Dist. LEXIS 211880, at *17 (citing *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) ("defendants cannot be thought to be reckless if the remedial step was not within their power")).

Further, Walker was not experiencing any sort of emergent symptoms while waiting for the root to be removed. *Compare McGowan*, 612 F.3d at 641 (plaintiff described symptoms such as painful swelling at the extraction site coupled with discharge which could support a finding that two months was too long to wait); *Berry*, 604 F.3d at 442 (plaintiff was forced to wait almost two months of serious pain despite the availability of an obvious treatment, a simple dentist visit, that plaintiff had specifically requested numerous times).

Walker described experiencing pain and only being able to eat on one side of his mouth, but he has not otherwise shown that these were emergent symptoms or that the delay exacerbated the injury. The nurse progress notes showed that there was no swelling, bleeding, discharge, redness, or infection during the time Walker was waiting for the extraction, and he was given pain medication during this time. Walker stated he was still able to continue his job as porter at all times. Additionally, the off-site dentist noted no signs of infection or swelling around the tooth and the extraction went smoothly with no complications. Walker may have been unhappy with having to wait, but "the Eighth Amendment does not require that prisoners receive 'unqualified access to health care.'" *Poirier*, 2024 U.S. Dist. LEXIS 211880, at *18 (citing *Johnson*, 433 F.3d at 1013).

Dr. Aldridge did not exhibit conduct exhibiting "a total unconcern for the prisoner's welfare in the face of serious risks." *Brown*, 38 F.4th at 550 (internal citations omitted); *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Walker had a procedure in which a common, nonemergent complication occurred, and the treatment addressing that complication was delayed

due to a mechanical failure which Dr. Alridge did not control. During this delay, Walker was seen by nurses and Dr. Aldridge and was given pain medication. After one month passed and the compressor had not been fixed, Dr. Aldridge sent a referral for an outside dentist to remove the remainder of the tooth. From that point, there is no evidence Dr. Aldridge had any control over when Walker would be treated by an outside provider. Even so, Walker was seen relatively quickly after the referral.

Therefore, no jury could reasonably conclude that Dr. Aldridge was deliberately indifferent to Walker's condition during the delay or that that the delay was the result of Dr. Aldrige's deliberate indifference to Walker's condition.

## Conclusion

For these reasons, the Motion for Summary Judgment (Doc. 28) filed by Defendant Dr. Aldridge is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: November 20, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**